ADELE KAHLE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27209.   Promulgated September 27, 1929.

*John F. McCarron, Esq.,* for the petitioner.
*Brooks Fullerton, Esq.,* for the respondent.

## 634

SMITH: This is a proceeding for the redetermination of deficiencies in income tax as follows:

| | |
|---|---:|
| 1918 | $11, 651. 60 |
| 1919 | 11, 566. 99 |
| 1920 | 12, 446. 10 |
| 1921 | 5, 050. 21 |
| 1922 | 11, 852. 24 |
| 1923 | 12, 575. 91 |
| Total | 65, 143. 05 |

The material facts involved in this proceeding are not in dispute.

During the taxable years 1918 to 1923, inclusive, the petitioner, a citizen of the United States, was resident in .Germany. Early in the year 1918 all of her property situate in the United States, consisting mostly of stocks, bonds, and other securities, was seized by the Alien Property Custodian under the authority of the Trading With The Enemy Act and held by him until January, 1924, when the corpus of the property, together with the income therefrom accruing during the period in which it was impounded, was returned to the petitioner through her attorneys in fact. No Federal income-tax returns in respect of the income in question were ever made by the petitioner or by her attorneys in fact, and no income taxes thereon have ever been assessed or paid.

In December, 1925, the deputy collector at St. Louis, Mo., acting under the instructions of the respondent, prepared income-tax returns on behalf of the petitioner for each of the years 1918 to 1923, inclusive. The necessary data for making up the returns had been previously secured by the respondent from the office of the Alien Property Custodian and other sources. The returns are dated December 21, 1925, and bear the caption "Adele Kahle (c/o John J. Brennan, Counselor, 717 Title Guarantee Bldg., St. Louis, Mo.) Dresden, Germany." A short time before making and filing the returns in question the deputy collector brought the matter to the attention of the petitioner's attorney in fact, John J. Brennan, who stated that he did not have the necessary records and could not himself prepare and file the returns on behalf of the petitioner. The taxes in dispute have been proposed for assessment upon the returns prepared and filed by the deputy collector.

The petitioner alleges errors on the part of the respondent as follows:

1. The Commissioner erred in determining a proposed deficiency in tax amounting to $65,143.05 on petitioner as delinquent for the taxable years 1918 to 1923, inclusive.

2. The Commissioner erred in filing alleged delinquent income-tax returns on petitioner for the taxable years 1918 to 1923, inclusive, as he had no legal

authority to file said alleged returns for petitioner under Section 3176 of the Revised Statutes.

3. The Commissioner erred in his application of the opinion of the Attorney General, dated June 21, 1920 (32 Op. 249) to the instant case.

4. The Commissioner erred in not applying Section 24 of the Act approved March 4, 1923 (42 Stat. 1. 1516), to amend the Trading with the Enemy Act to the instant case.

In other words, the petitioner contends that the so-called delinquent returns prepared and filed on petitioner's behalf by the deputy collector are not authorized by the statute and are not valid returns; that there was in fact no delinquency on the part of the petitioner in filing returns for the years in question, since that duty was by law imposed upon the Alien Property Custodian, who had custody of the property during those years, and that the proposed assessments on the delinquent returns are therefore unlawful.

Section 3176, Revised Statutes, as amended by section 1003 of the Revenue Act of 1924, provides as follows:

If any person, corporation, company, or association fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, or makes, willfully or otherwise, a false or fraudulent return or list, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. In any such case the Commissioner of Internal Revenue may, from his own knowledge and from such information as he can obtain through testimony or otherwise, make a return or amend any return made by a collector or deputy collector. Any return or list so made and subscribed by the Commissioner, or by a collector or deputy collector and approved by the Commissioner, shall be prima facie good and sufficient for all legal purposes.

If the failure to file a return (other than a return under Title II of the Revenue Act of 1924) or a list is due to sickness or absence, the collector may allow such further time, not exceeding thirty days, for making and filing the return or list as he deems proper.

The Commissioner of Internal Revenue shall determine and assess all taxes, other than stamp taxes, as to which returns or lists are so made under the provisions of this section. In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax. In case a false or fraudulent return or list is willfully made, the Commissioner shall add to the tax 50 per centum of its amount.

The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, falsity, or fraud, in which case the amount so added shall be collected in the same manner as the tax.

An amendment to the Trading With The Enemy Act, enacted March 4, 1923 (Public No. 536), provides as follows:

The Alien Property Custodian is authorized to pay all taxes (including special assessments), heretofore or hereaftei lawfully assessed by any body

politic against any money or other property held by him or by the Treasurer of the United States under this Act, and to pay the necessary expenses incurred by him or by any depositary for him in securing the possession, collection, or control of any such money or other property, or in protecting or administering the same. Such taxes and expenses shall be paid out of the money or other property against which such taxes are assessed or in respect of which such expenses are incurred, or (if such money or other property is insufficient) out of any other money or property held for the same person, notwithstanding the fact that a claim may have been filed or suit instituted under this Act.

The question of whether filing income-tax returns and reporting income on property held by the Alien Property Custodian was a duty imposed by law upon that official was referred to the Attorney General by the Treasury Department in the year 1920, and on June 21, 1920, the Attorney General rendered an opinion, 32 Op. Atty. Gen. 249, stating in part as follows:

I am of opinion that property seized and held by the custodian is seized and held by the United States through the custodian as the official or agent designated by law to act for the President in that regard. I am further of the opinion that the United States takes possession of such property to make such use of it as Congress may hereafter direct and that it can not be said to be property held in trust within the meaning of the Revenue Act. I am also of opinion that the custodian is not such a trustee or fiduciary as is required by the law to make tax returns or pay income taxes, but that he is merely an official or agent of the Government.

This does not mean that, if property or income shall be returned to the former owners, and the amounts received by them include any income that may have accrued during the time the property was held by the custodian, such former owners are not liable for income taxes. Undoubtedly, before paying out any funds which represent such income the Treasury Department may ascertain the taxes due thereon and require them to be paid. I merely mean to say that, in my opinion, the law does not require the custodian to make such returns or pay such taxes.

The law as interpreted by the Attorney General in the above opinion authorizes but does not require the Alien Property Custodian to pay all taxes assessed against any money or other property held by him, but does not make it his duty to make a report for taxation purposes of the income from such property to the taxing authorities. At the time the Alien Property Custodian surrendered the petitioner's property in 1924 no income taxes thereon had ever been assessed or determined. The Alien Property Custodian was therefore not authorized to withhold any amount as representing unpaid taxes.

Whether or not the Attorney General has properly ruled that the duty of filing income-tax returns in respect of income from property held by the Alien Property Custodian did not rest upon that official, we do not see that a contrary conclusion would justify the petitioner's contention that the so-called delinquent returns made and filed by the deputy collector on behalf of the petitioner for the years

before us are invalid. Section 1003 of the Revenue Act of 1924, *supra*, provides that "*if any person, corporation, company, or association*" fails to make and file a return or list at the time prescribed by law or by regulation made under authority of law, the collector or deputy collector shall make the return or list from his own knowledge and from such information as he can obtain through testimony or otherwise. Whoever may have been responsible for the filing of the returns in respect of the income in question, whether the Alien Property Custodian, the petitioner, or her attorneys in fact, their failure to do so authorized the collector or deputy collector to make the returns as provided in section 1003 of the Revenue Act of 1924 above quoted. No exception to the general provisions of the statutes for reporting income is to be found in either the Revenue Act of 1918 or 1921 with respect to the income from property held by the Alien Property Custodian.

In *Forstmann* v. *Ferguson*, 17 Fed. (2d) 659; 25 Fed. (2d) 47, the court ruled that the income from property held by the Alien Property Custodian should be returned and taxes thereon paid as and for the years in which the taxpayer would have received it had it not been impounded by the Government.

Under these circumstances we think that the returns prepared and filed by the deputy collector on behalf of the petitioner for the years before us comply with the requirements of the statute, and since the petitioner has not shown that the taxes proposed for assessment thereon are incorrect, the deficiencies determined by the respondent are approved.

*Judgment will be entered for the respondent.*